Emil P. Khatchatourian, CA Bar No. 265290
ekhatchatourian@foley.com
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

Attorneys for Proposed Intervenor
Global Growth Capital S.à.r.l.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

SERGIO GIANCASPRO, an individual, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

NETWORK TRAVEL EXPERIENCES, INC., a Delaware corporation; STREETTEAM SOFTWARE, LLC, a Delaware limited liability company; and DOES 1 through 20, inclusive,

Defendants.

Case No. 2:22-cv-05745-JFW-E

**PROPOSED INTERVENOR GLOBAL GROWTH CAPITAL S.À.R.L.'S RESPONSE AND OBJECTION TO PLAINTIFF'S MOTION FOR APPOINTMENT OF TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE RE: PERMANENT RECEIVER**

Date: October 31, 2022
Time: 1:30 p.m.
Place: Courtroom 7A
United States Courthouse,
350 W. 1st Street,
Los Angeles, CA 90012

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. GGC'S LOAN TO STREETTEAM SOFTWARE LTD., DEFENDANTS' GUARANTIES, AND GGC'S SECURITY INTERESTS ..... 3

B. STREETTEAM DEFAULTS UNDER THE FACILITIES AGREEMENT ..... 4

C. THIS LAWSUIT AND PLAINTIFF'S MOTION TO APPOINT A RECEIVER ..... 4

III. OBJECTIONS TO THE RECEIVERSHIP MOTION ..... 5

A. OBJECTION NO. 1: THE RECEIVERSHIP MOTION FAILS TO ACCOUNT FOR GGC'S SECURITY INTERESTS AND DOES NOT CONSIDER THAT GGC IS ENTITLED TO FULL PAYMENT OF THE INDEBTEDNESS DUE BEFORE ANY OF THE DEFENDANTS' UNSECURED CREDITORS. ..... 5

B. OBJECTION NO. 2: THE RECEIVERSHIP MOTION FAILS TO SATISFY THE HEAVY BURDEN IMPOSED BY THE RELEVANT FACTORS CONSIDERED BY COURTS BEFORE APPOINTING A RECEIVER, AN EXTRAORDINARY EQUITABLE REMEDY WHICH IS NORMALLY RESERVED FOR EXTREME SITUATIONS. ..... 7

C. OBJECTION NO. 3: THE APPOINTMENT OF A RECEIVER WOULD SEVERELY HAMPER AND FRUSTRATE GGC'S EFFORTS TO REALIZE THE VALUE OF THE COLLATERAL THROUGH A SALE PROCESS OR FORECLOSURE REMEDIES. ..... 10

IV. RESERVATION OF RIGHTS REGARDING FACTUAL CONTENTIONS ..... 12

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314 (8th Cir. 1993) .......... 7, 8

*Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837 (9th Cir. 2009) .......... 7, 8

*Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93 (2d Cir. 1988) .......... 8

*First Louisiana Inv. Corp. v. United States*, 351 F.2d 495 (5th Cir. 1965) .......... 8

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003) .......... 5

*Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400 (3d Cir. 1942) .......... 8

*In re Real Prop. Located at Redacted Jupiter Drive, Salt Lake City, Utah*, No. 2:05-CV-1013, 2007 WL 7652297 (D. Utah Sept. 4, 2007) .......... 6

*Rosen v. Siegel*, 106 F.3d 28 (2d Cir.1997) .......... 7

*SEC v. Credit Bancorp, Ltd.*, 386 F.3d 438 (2nd Cir. 2004) .......... 5

*Ticonic Nat'l Bank v. Sprague*, 303 U.S. 406 (1938) .......... 6

**State Cases**

*Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Assn.*, 184 Cal. App. 3d 817 (1986) .......... 5

**Federal Statutes**

11 U.S.C.
§ 507(a)(4) ..... 2, 6, 7
§§ 101-1532 ..... 2, 7

Federal Rule of Civil Procedure 56(c)(4) ..... 8, 9

L.R. 7-6 ..... 12

L.R. 7-7 ..... 8, 9

L.R. 7-9 ..... 12

**State Statutes**

California Code of Civil Procedure
§§ 489.210 and 220 ..... 1, 11
§ 1024 ..... 2
§ 1204(a)(1) ..... 2, 6

## I. INTRODUCTION

The extraordinary remedy of appointing a receiver is not urgently necessary in this case. Global Growth Capital S.à.r.l. ("GGC"), a non-party secured lender,[1] has perfected security interests in all of the Defendants' assets that were granted in connection with loans of $25,000,000 that GGC issued to the Defendants' parent company, StreetTeam Software Ltd. ("StreetTeam Ltd."). The loans to StreetTeam Ltd. are in default, and the Defendants, who have unconditionally guaranteed them, are obligated to pay GGC an amount not less than **$19,111,383.04**. The Defendants are no longer in operation, and GGC is evaluating its options and legal remedies with respect to the Defendants' assets (collectively, the "Collateral") and has been actively working with the Defendants to find third-party buyers to purchase all or substantially all of the Collateral, which sale or sales would require the approval and consent of GGC.

Despite GGC's status as the Defendants' first-priority secured creditor – a fact of which Plaintiff is fully aware – Plaintiff nonetheless seeks the appointment of a receiver to take control and administer the Defendants' assets, impinging on GGC's rights in, and the value of, the Collateral. As discussed below, the appointment of a receiver would impede GGC's ability to pursue its legal remedies, impair its rights, and merely delay the inevitable – namely, GGC's receipt of all the remaining value of the Defendants' assets. By virtue of its prior perfected liens, GGC is entitled to realize the value of the Collateral and receive full payment before any other creditor of the Defendants. Plaintiff's maneuvering is, in effect, an effort to skirt the law and obtain a prejudgment writ of attachment without posting a bond – as required by California Code of Civil Procedure Sections 489.210 and 220 – and Plaintiff completely ignores the Defendants' obligations to GGC, a fully secured lender whose debt claims dwarf the value of the Collateral associated with the Defendants.

[1] Concurrently herewith, GGC has filed a motion to intervene to protect its interests in this Lawsuit (as defined below).

*Plaintiff's Motion for Appointment of Temporary receiver and Order to Show Cause Re: Permanent Receiver; Memorandum of Points and Authorities* [ECF No. 16] (the "Receivership Motion") requests that the Court appoint a temporary receiver and issue an order to show cause why a permanent receiver should not be appointed. The Receivership Motion also paints an alarming picture of a pervasive fraudulent scheme being perpetrated by the Defendants in an alleged attempt to divert assets to the detriment of wage claimants. GGC, who has been actively monitoring the Defendants' activities and coordinating with them on a value-maximizing sale process, does not share this view. Rather, GGC is deeply concerned by Plaintiff's complete lack of awareness of GGC's liens and security interests and his failure to consider these superior interests in discussing the balance of harms vis-à-vis all interested parties and stakeholders.

GGC hereby responds and objects (this "Response") to the Receivership Motion for the following reasons:

1. The Receivership Motion fails to account for GGC's security interest and does not consider that GGC is entitled to full payment of the indebtedness due before any of the Defendants' unsecured creditors – including priority wage claimants under California Code of Civil Procedure § 1204(a)(1).[2]

2. The Receivership Motion fails to satisfy the heavy burden imposed by the relevant factors considered by courts before appointing a receiver, an extraordinary equitable remedy which is normally reserved for extreme situations.

3. The appointment of a receiver would severely hamper and frustrate GGC's efforts to realize the value of the Collateral through a cooperative sale process or foreclosure remedies.

---

[2] Plaintiff incorrectly cites to California Code of Civil Procedure § 1024, which relates to postponement of trials in California civil actions. Plaintiff also refers (perhaps by analogy) to 11 U.S.C. § 507(a)(4), which applies only in bankruptcy cases under title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

## II. FACTUAL BACKGROUND

### A. GGC's Loan to StreetTeam Software Ltd., Defendants' Guaranties, and GGC's Security Interests

On or about February 13, 2020, GGC entered into a facilities agreement (the "Facilities Agreement") with StreetTeam Ltd., as borrower ("Borrower"), and with StreetTeam Ltd. and its subsidiaries—including Defendants—as guarantors (the "Guarantors" and, together with Borrower, the "Obligors"). Under the Facilities Agreement, GGC made available to the Obligors two term loan facilities in the aggregate amount of $25,000,000 (the "Loans"). Each of the Guarantors, including the Defendants, executed irrevocable and unconditional joint and several guaranties with respect to the Loans (the "Guaranties"). *See* Proposed Complaint in Intervention ("GGC Compl.") [ECF No. 41-2], ¶¶ 7, 9, Exh. 1.

In connection with the Facilities Agreement, on or about February 13, 2020, the Defendants, as Obligors, executed a security agreement (the "Security Agreement") whereby they pledged, collaterally assigned, and granted to GGC a continuing security interest in substantially all of their assets. Pursuant to the Security Agreement, on or about May 28, 2020, both Defendants executed deposit account control agreements (the "DACAs"). As authorized by the Security Agreement, GGC filed UCC financing statements in all appropriate jurisdictions and thereby perfected its security interest and rights in the Collateral. *See* GGC Compl., ¶¶ 10-11, Exh. 5.

Also in connection with the Facilities Agreement, on or about February 13, 2020, the Defendants, as Obligors, both executed an intellectual property security agreement (the "IP Security Agreements"), granting and unconditionally pledging to GGC a security interest in substantially all of their intellectual property. Pursuant to the IP Security Agreements, the Defendants authorized the Commissioner for Patents, the Commissioner for Trademarks, and the Register of Copyrights to record and register the IP Security

Agreements and UCC filings, which was completed on February 20, 2020. *See* GGC Compl., ¶¶ 12-13, Exh. 8.

**B. StreetTeam Defaults Under the Facilities Agreement**

By no later than July 12, 2022, StreetTeam Ltd. had defaulted under the Facilities Agreement, including, without limitation, due to its insolvency, the initiation of insolvency proceedings in the United Kingdom, and non-payment of amounts due under the Loans. GGC provided StreetTeam Ltd. with formal written notice of defaults on July 12, 2022. Upon StreetTeam Ltd.'s default, GGC became entitled to execute all of its rights under the Guaranties.

Presently, the amounts immediately due and owing by each of the Defendants to GGC pursuant to the Facilities Agreement and the Guaranties are as follows:

| | | |
|---|---|---|
| Principal Balance | $ | 18,971,049.25 |
| Standard Interest | $ | 62,370.57 |
| Default Interest | $ | 77,963.22 |
| **Total Due as of October 10, 2022** | **$** | **19,111,383.04** |

The foregoing amounts, and attorneys' fees and costs associated with collection not reflected here, are secured pursuant to the terms of the Security Agreement. On information and belief, the value of the Defendants' assets is substantially less than the amounts the Defendants now owe to GGC.

**C. This Lawsuit and Plaintiff's Motion to Appoint a Receiver**

On August 12, 2022, Plaintiff initiated this seven-count wage-related lawsuit (the "Lawsuit") against the Defendants. *See* ECF No. 1. As of the date of this Response, the Defendants have not filed an answer,[3] and the Court has not yet set a scheduling

[3] A principal of one of the Defendants filed a request for an extension of time to answer the complaint. *See* ECF No. 40.

conference. On September 28, 2022, Plaintiff filed the Receivership Motion, and shortly thereafter, GGC became aware of the relief sought by Plaintiff and, through counsel, began conferring with Plaintiff's counsel regarding GGC's interests and the Receivership Motion. As more particularly described in the *Joint Statement of Proposed Intervenor Global Growth Capital S.à.r.l. and Plaintiff Sergio Giancaspro Regarding Having Met and Conferred in Advance of the Filing of Proposed Intervenor Global Growth Capital S.à.r.l.'s Motion to Intervene* [ECF No. 39], counsel for GGC conferred with counsel of record for Plaintiff, Attorney Damion Robinson, regarding the basis for its motion to intervene in this action, which is being filed contemporaneously herewith, and GGC's intention to file this Response.

## III. OBJECTIONS TO THE RECEIVERSHIP MOTION

### A. Objection No. 1: The Receivership Motion fails to account for GGC's security interests and does not consider that GGC is entitled to full payment of the indebtedness due before any of the Defendants' unsecured creditors.

GGC has a perfected, first-priority security interest and liens in all of the Defendants' assets securing repayment of the guaranteed Loans. Plaintiff makes no mention of this in the Receivership Motion. A receiver "stands in the shoes" of the receivership entities and "acquires no greater rights in the property" than the receivership entities. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003). "[A] receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *SEC v. Credit Bancorp, Ltd.*, 386 F.3d 438, 446 (2nd Cir. 2004) (quoting *Marshall v. People of State of New York*, 254 U.S. 380, 385 (1920)); *see also Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Assn.*, 184 Cal. App. 3d 817, 823 (1986).

As the secured creditor, GGC's first-priority interest would take precedence over any unsecured creditor claims in the event a receiver is appointed and takes control of the

Defendants' assets. *See, e.g.*, *In re Real Prop. Located at Redacted Jupiter Drive, Salt Lake City, Utah*, No. 2:05-CV-1013, 2007 WL 7652297, at *4 (D. Utah Sept. 4, 2007) ("The Supreme Court has also held that 'to the extent that one debt is secured and another is not there is manifestly an inequality of rights between the secured and unsecured creditors, which cannot be affected by the principal of equality of distribution.'") (quoting *Ticonic Nat'l Bank v. Sprague*, 303 U.S. 406, 411-12 (1938)).

Here, as set forth above and in GGC's Proposed Complaint in Intervention, GGC is a senior secured creditor of the Defendants. More specifically, the Loans are secured by perfected security interests in all the Defendants' assets. The Receivership Motion does not acknowledge GGC's liens and does not discuss GGC's superior right to be paid all amounts owed to it on account of the obligations secured by the Collateral. To be sure, all proceeds from the sale or other disposition of assets constituting the Collateral of GGC must be paid to GGC to satisfy all amounts due under the Facilities Agreement and Guaranties. Any other outcome, including use of proceeds to pay other creditors or claimants, would be contrary to law and a derogation of GGC's security interests. *See Ticonic Nat. Bank*, 303 U.S. at 412 (holding that courts in equity cannot disregard or invalidate a secured lender's interest in payments in favor of unsecured interests for the purpose of furthering equitable distribution).

Plaintiff argues that the Defendants "are blatantly attempting to circumvent priority wage claims of former employees," relying on state and federal law ostensibly entitling wage claimants to preference. *See* Receivership Mot. at 15, lines 13-21. These statutes, to the extent they apply, would not elevate wage claimants' claims to a status that would trump the security interests and liens belonging to GGC, which were properly perfected in 2020. For example, Cal. Code Civ. P. § 1204(a)(1) refers only to "[a]llowed *unsecured* claims" of wages "earned within 90 days before . . . the cessation of the debtor's business . . . ." Cal. Code Civ. P. § 1204(a)(1). In addition, Plaintiff's reference to 11 U.S.C.

§ 507(a)(4) is inapposite in this action, because that statute only applies to a bankruptcy estate being administered under title 11 of the United States Code. In any event, it also refers only to "allowed *unsecured* claims." *See* 11 U.S.C. § 507(a)(4).

It is obvious the Receivership Motion was filed prematurely. This action is in a nascent stage, and the Defendants have yet to appear and answer the Complaint. Yet, Plaintiff is manufacturing an "emergency" where none exists, and Plaintiff's failure to acknowledge GGC's interests as a senior, secured lender is a material red flag. An order appointing a receiver at this stage is not appropriate.

**B. Objection No. 2: The Receivership Motion fails to satisfy the heavy burden imposed by the relevant factors considered by courts before appointing a receiver, an extraordinary equitable remedy which is normally reserved for extreme situations.**

Plaintiff paints a dire picture of dissipating assets and fraudulent conduct – which is inaccurate and misleading – in the hope of taking advantage of this Court's equitable discretion to appoint a receiver. In doing so, Plaintiff has failed to present any credible evidence in favor of appointing a receiver. As discussed below, the declarations in support of the Receivership Motion are based on speculation and hearsay and fundamentally misconstrue the macroeconomic business context in which the Defendants – as Guarantors under the Facilities Agreement – must manage their affairs to satisfy the secured obligations owed to GGC.

As courts have recognized, "appointing a 'receiver is an extraordinary equitable remedy,' which should be applied with caution." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (citing *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)); *see also Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir.1997) ("[T]he appointment of a receiver is considered to be an extraordinary remedy, and . . . should be employed cautiously and granted only when clearly necessary to protect

plaintiff's interests in the property." (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)); *First Louisiana Inv. Corp. v. United States*, 351 F.2d 495, 497-98 (5th Cir. 1965) ("The appointment of a receiver, like the granting of a preliminary injunction is, in no small measure, a discretionary matter."); *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942) ("Receivership is not to be resorted to if milder measures will give the plaintiff . . . adequate protection for his rights . . . . It is to be exercised sparingly and with great caution, and only under extreme and exceptional circumstances.") (internal citations omitted).

Under Ninth Circuit law, "there is 'no precise formula for determining when a receiver may be appointed.'" *Canada Life Assur.*, 563 F.3d at 844 (quoting *Aviation Supply Corp.*, 999 F.2d at 316). Nonetheless, relevant factors for determining whether to appoint a receiver include the following: "(1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct[ ] by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." *Id.* (internal quotation marks omitted) (alterations in original). In determining whether to appoint a receiver, the Court "may consider a host of relevant factors," and "no one factor is dispositive." *Id.* at 845.

The most fundamental factual premises underpinning Plaintiff's justification for seeking a receiver lack foundation and constitute hearsay, which violates L.R. 7-7 and Federal Rule of Civil Procedure 56(c)(4) (as incorporated by reference in L.R. 7-7 and stating an "affidavit or declaration used to support or oppose a motion must be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). FED. R. CIV. P. 56(c)(4) (as incorporated by L.R. 7-7). On information and belief, a number of the individuals submitting declarations in support of the Receivership Motion – who were non-management individuals – were necessarily speculating or relying on hearsay as they would not have had direct knowledge of the facts contained in their respective declarations.

Here, Plaintiff would have this Court presume the validity of the wage-based claims, including the applicability of the WARN Act claims, notwithstanding the potential viability of the Defendants' defenses thereto and other considerations, such as the classification of workers as independent contractors or employees under applicable law. While these are matters for the Defendants to respond to and defend in due course, GGC is compelled to object to the presumed validity of the claims in the Complaint to the extent the Court is inclined to appoint a receiver based on Plaintiff's presumption that the individual claimants have valid claims. On information and belief, the classification of individuals as employees or independent contractors as well as the number of employees at the Defendants' facilities is disputed. The self-serving declarations in support of the Receivership Motion are fraught with hearsay and unsupported assertions made by second- and third-hand party declarants. This is not credible or properly submitted evidence.

In addition, Plaintiff claims that he and other similarly situated claimants would suffer irreparable harm if a receiver were not appointed. Receivership Mot. at 15-16. As discussed in Section II.A. above, the Receivership Motion completely ignores GGC's rights as a secured creditor and fails to appreciate and discuss how those rights would interact with purported priority wage claims (*i.e.*, that prior perfected liens would trump unsecured priority claims). All the allegations of fraudulent conduct, misrepresentations, and diversion of assets in the Receivership Motion constitute a manufactured narrative to sound the alarms and have this Court appoint a receiver. The truth is the Defendants are

cooperating with GGC to find motivated, third-party buyers to acquire the assets constituting GGC's Collateral to consummate a value-maximizing transaction that would allow the Defendants to pay down their guaranteed and secured debt obligations.

Conspicuously omitted from Plaintiff's discussion of the balance of harms being "strongly" in favor of Plaintiff is any mention of GGC and the significant harm to its security interests and liens if a receiver were appointed. Plaintiff believes that the purported "diversion of assets and revenue" would prejudice only the wage claimants, which he claims "should be paid before *other creditors*." Receivership Mot. at 19, lines 26-27 (emphasis added). The only other parties Plaintiff mentions in his incomplete analysis are the Defendants, claiming that "any harm to Defendants is minimal." *Id.* at 20, line 2. It bears repeating that GGC and its rights are simply not part of Plaintiff's consideration. Moreover, if a receiver were appointed (one should not be), that receiver would be obligated to administer the Defendants' assets solely for the benefit of GGC. In this sense, Plaintiff's interests sought to be protected would in fact not be well-served by a receiver. These are compelling factors for denying the Receivership Motion.

**C. Objection No. 3: The appointment of a receiver would severely hamper and frustrate GGC's efforts to realize the value of the Collateral through a sale process or foreclosure remedies.**

Plaintiff's desired remedy is to cut in line ahead of GGC's first-priority, secured claim. GGC's realization of the value of the Collateral is tied to the outcome of this Lawsuit, and no other party in this Lawsuit is incentivized to protect GGC's economic interests and the preservation of the value of the Collateral. For that reason, GGC objects to the Receivership Motion to make clear that it has paramount rights in the Collateral – ahead of all unsecured creditors, even those who may hold priority claims under applicable state law.

The appointment of a receiver would impede GGC's ability to pursue its legal remedies, impair its rights, and merely delay the inevitable – namely, GGC's receipt of all the remaining value of the Defendants' assets. By virtue of its prior perfected liens, GGC is entitled to realize the value of the Collateral and receive full payment before any other creditor of the Defendants. Plaintiff's maneuvering is, in effect, an effort to skirt the law and obtain a prejudgment writ of attachment without posting a bond – as required by California Code of Civil Procedure Sections 489.210 and 220 – and Plaintiff completely ignores the Defendants' obligations to GGC, a fully secured lender whose debt claims dwarf the value of the Collateral associated with the Defendants.

If the Receivership Motion is granted, a receiver would assume full control of the Defendants' assets and cut off GGC's ability to foreclose upon and sell the same on a timeline and terms acceptable to it – even though the Defendants' assets constitute the Collateral of GGC securing the obligations under the defaulted Loans. Moreover, Plaintiff requests that the receiver be paid for his services out of the value of the assets themselves. *See* Receivership Mot., Proposed Order at 13. In effect, this would convert GGC's Collateral to assets of the receiver – effectively surcharging the Collateral to the detriment of GGC.

If GGC believed the Defendants were engaged in fraudulent conduct or if it had other serious concerns resulting in a crisis of confidence, it might have supported, or separately sought, the appointment of a receiver to protect the value of the Collateral. This, however, is not the case, and GGC does not share Plaintiff's view that there is a "pervasive pattern of fraud, embezzlement, and other illegal activity." Receivership Mot. at 17, lines 15-16. GGC does not need the aid of a third-party entity to effectuate a value-maximizing sale in a commercially reasonable manner that ensures GGC will receive all amounts to which it is entitled under the Facilities Agreement, Guaranties, and applicable law.

A critical question for the Court is the following: why should a receiver be appointed to administer fully encumbered assets for which Plaintiff and similarly situated claimants will receive no benefit? GGC submits there is no good reason to do so and strongly opposes the appointment of a receiver.

## IV. RESERVATION OF RIGHTS REGARDING FACTUAL CONTENTIONS

The undersigned counsel is aware of the local requirements that (a) "[f]actual contentions involved in any motion and opposition to motions shall be presented, heard, and determined upon declarations and other written evidence alone," L.R. 7-6, and (b) "the evidence upon which the opposing party will rely in opposition to the motion" shall be served not later than 21 days before the date of the hearing. L.R. 7-9.

Unfortunately, due to practical challenges and timing constraints, GGC was unable to secure a timely executed declaration of a declarant competent to testify on the matters set forth in this Response. GGC reserves the right to seek leave from this Court to submit one or more declarations in support of this Response prior to the hearing on the Receivership Motion.

## V. CONCLUSION

Based on the foregoing, the Receivership Motion should be denied, and the Court should not issue an order to show cause why a permanent receiver should not be appointed.

DATED: October 11, 2022

Foley & Lardner LLP

*/s/ Emil P. Khatchatourian*
Emil Khatchatourian

Attorneys for Proposed Intervenor
GLOBAL GROWTH CAPITAL S.À.R.L.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2022:

I electronically filed and served the foregoing document with the Clerk of the Court using the Court's case management and electronic case filing system, thereby causing the document to be served by email on all counsel of record.

I served the foregoing document on Defendants Network Travel Experiences, Inc. and StreetTeam Software LLC (collectively, "Defendants") by sending a PDF copy of the same to the following email addresses: James Ellis (james.ellis@pollen.co); Callum Negus-Fancey (callum@pollen.co). I also provided a true copy of the foregoing to our attorney service with directions to personally deliver the same to the registered agent for service of process for Defendants, as follows: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

DATED: October 11, 2022

*/s/ Emil P. Khatchatourian*
Emil P. Khatchatourian